# Weiting and Wife *versus* Nissley.

An administrator, who illegally has caused to be sold at sheriff's sale, land claimed by his intestate, under articles of agreement, and of which he had possession at his death, is liable to an action by the heir for damages; and the settlement of an account by the administrators, in the Orphan's Court, in which the proceeds of sale of the land were not charged, will not bar the action.

The measure of damages is the value of the land at private sale, at the time of its sale by the sheriff, with interest from the time of sale.

These were two writs of error to the Common Pleas of *Dauphin* county. They were argued together.

The first was an action on the case by A. Weiting and Elizabeth his wife, against Martin Nisley. Jacob Hershey died in December, 1829, intestate, leaving Elizabeth, the plaintiff, his only child, who was then about three years old, and the defendant, with another Martin Nissley of Conewago, became his administrators. Among other lands owned by Jacob Hershey, were two tracts containing together about fifty acres, which it was proved he purchased from James Jackson, by articles of agreement, dated 11th February, 1822, and for which the purchase money was paid.— Jacob Hershey took possession of this land, and held it till his death. A deed from Jackson to him, for this land, was

[Weiting·and wife *v.* Nissley.]

found among the papers of Martin Nissley of Conewago, after his death. The defendant, with his co-administrator, after the death of Jacob Hershey, took possession of this land, and leased it for years ending 1st April, 1831, and 1st April, 1832. There was a judgment in favor of Jacob Hershey, against James Jackson, in Dauphin Common Pleas, entered July 17th, 1819, and revived in 1831. On this judgment the defendant, and Martin Nissley of Conewago, as administrators of Jacob Hershey, deceased, caused executions to be issued, under which this land was levied and sold by the sheriff of Dauphin county on 14th of January, 1832, to Benjamin Young, for $500. It was proved that the defendant was present at the sheriff's sale, and requested the purchaser to bid for the property. After this sale the purchaser took possession of the land, and holds it to this time. The purchase money paid by Young was paid over by the sheriff to Mr. Elder, attorney for the administrators, less the costs, amounting to $439 70, which Mr. Elder paid over to Martin Nissley of Conewago. The administrators of Jacob Hershey settled an administration account, which was confirmed 16th May, 1837, showing a balance in their hands of $6,475 51; and a supplemental and final account, which was confirmed 12th February, 1839, showing a balance in their hands of $1,488 41; but the purchase money of the Jackson land was not included or accounted for in either of these accounts. These balances were paid over to the widow of Jacob Hershey, and the guardian of Elizabeth, the daughter, who was appointed about the time of the settlement of the first account. Martin Nissley, of Conewago, died several years before this suit was brought.

The plaintiffs contended that the defendant had voluntarily assumed the guardianship of Elizabeth Hershey, in respect of this land, and was bound to act with reasonable care and good faith; and that knowing the title was vested in her, he proceeded fraudulently to have the lands sold by the sheriff, whereby she lost the land and the profits of it from 1832, and that for the value of the land, and the profits of it, the defendant was answerable in this suit.

The defendant pleaded not guilty, and the statute of limitations; to which, on the part of the plaintiff, was filed a special replication of infancy.

It was alleged on the part of Martin Nissley, that plaintiffs below produced on the trial an article of agreement between Jackson and Hershey, without shewing that it was ever in the possession of Hershey, or in that of either of the administrators of his estate, or that either of them saw or knew any thing about it, or that it had existence.

It was proved that Jackson had executed on the 22d June, 1821, a deed, assigning the same property to Henry Hawk and John

[*Weiting and wife v. Nissley.*]

Landis, (Hill,) in fee, in trust for his creditors, which title in fee remained in them up to the time of the sheriff's sale in 1832, which plaintiff in error contended on the trial they could not divest themselves of by parol, in the way and manner the plaintiffs below claimed they had done.

They showed a parol assent to the articles made between Jackson and Hershey by the assignees before named, but they failed to show that the assignees ever executed a deed to Hershey, or assented to a deed from Jackson to Hershey. One of the assignees, (Hawk,) called as a witness by plaintiff below, proved that Jacob Hershey did not enter satisfaction on his judgments, but absolutely refused so to do when the assignees requested him to do so, and that they did not make him a deed because they were advised by their counsel not to make a deed to Hershey until he entered satisfaction on those judgments.

Plaintiff below also gave in evidence a deed from James Jackson to Jacob Hershey for the same two tracts of land, dated 27th June, 1829, acknowledged 17th June, 1829, the admission of which as evidence was objected to, that being dated subsequent to the acknowledgment of it, could not be received in evidence, at least without common law proof of its existence. Solms and M'Culloch et al., 5 *Barr*, 473. This deed was found amongst the papers of Martin Nissley, of Conewago, after his death, in 1841, by the appraisers of his effects, by one of whom it was handed to Young, the purchaser, at sheriff's sale. This deed appeared to have been twice acknowledged, or at least the same acknowledgment was tested by two different magistrates at two different times, as appeared from the difference in the color of the ink of the signatures of the magistrates, of Jackson and his wife, and the insertion of the name of the wife wherever it occurred in the deed. This deed was never shown to have been in the possession of or delivered to Jacob Hershey during his lifetime, after its execution by the wife of Jackson, nor was it shown that the defendant had any knowledge of it, ever seen or heard of it, until produced at the trial. It was not shown that any other deed or title paper, for any part of Hershey's real estate whatever, was found among the papers of his said administrator.

That there was no evidence that Nissley of Conewago had the deed by Jackson to Hershey, before the sheriff's sale; nor that it was ever delivered.

The bond of Hershey to Jackson, on which the judgment was entered, was placed in Mr. Elder's hands, by E. Heller of Middletown, on 22d March, 1830, to collect the money. Mr. Elder revived the judgments, issued the executions, received from the sheriff on the 22d January, 1832, $449 71; and shortly after 2d May, 1831, paid over to Martin Nissley, of Conewago, $439 71.

The only proof that was brought home to the plaintiff of any

[Weiting and wife *v.* Nissley.]

knowledge whatever in relation, in any way or manner, to this transaction was, that he was present at sheriff's sale, and told Young, the purchaser, "that if he wanted the land, he would have to bid on it." That he joined his co-administrator in giving notice to a tenant to quit possession on 1st April, 1830, and in leasing it in 1830 and 1831, and that he signed with him the conditions for the renting of the property at that time by public vendue. There was no proof that he ever knew, saw, or heard of the articles of agreement between Hershey and Jackson, or the deed from Jackson and wife to Hershey; nor that he gave any instructions for the renewal of the judgments, or the issuing of the executions; nor did he ever receive one dollar of the proceeds of sale, (or knew that his co-administrator had received it from Elder;) and upon these facts this action *ex delicto* was founded, and upon them he is charged with fraudulently contriving with his co-administrator to have the judgment before mentioned proceeded on.

The defendant gave in evidence record of Supreme Court, showing proceedings in the Orphans' Court of Dauphin county and this court, in the case of Weiting *vs.* Nissley, reported 6 *Barr*, 141, 3. Also, the appointment, upon the application of the mother of Mrs. Weiting, of Christian Nissley as her guardian, on the 17th April, 1837. Release, dated February 12, 1839, by said guardian to the administrators of Jacob Hershey, in the final settlement of their administration account. (Release of Archibald Weiting to Christian Nissley, guardian, dated 24th November, 1845.) Also, proved that the sale of this property by the sheriff for $500, was its full value at that time, by George Kayler, Esq., who examined the property at the time of the sheriff's sale, with a view to becoming a purchaser of it. Young, the purchaser at sheriff's sale who was called by the plaintiff, having previously proved that he thought he paid enough for it at sheriff's sale, and that he thought at the time that he bid, $500 was enough for it. Nor did the plaintiffs aver in their narr. that the property was sold at a sacrifice.

On the part of plaintiffs, Hawk, one of the assignees of Jackson was produced, who proved that Jackson owed the largest sum of money to Hershey—that Hershey brought another claim against Jackson, and then informed the assignees that he had all the demands against Jackson—that Jackson said the same—that there was an understanding that Hershey would buy Jackson's real estate, provided we (the assignees) would consent, that Landis, the assignee, said that he should not make Hershey a deed, till satisfaction be entered of the judgments on the docket.

Evidence was also given on the part of the plaintiffs, of the value of the real estate sold at sheriff's sale to Young.

It was alleged on the part of defendant, that a judgment which existed in favor of the Bank of Swatara against Jackson, entered on the 29th July, 1819, for $900, with interest from 11th June,

[Weiting and wife *v.* Nissley.]

1849, and evidence of which was given on the part of plaintiff's below, was not owned by Hershey.

PEARSON, J., charged the jury, *inter alia.*—If your verdict should be in favor of the plaintiffs, the next question is as to the measure of damages. The plaintiffs counsel contends that they are entitled to the present value of the property, and also to the annual rents from the time of sale, making in all nearly or quite $4,000. That is not the true measure of damages. A large portion of the present value arises from improvements made by the purchaser. The witnesses state the property at the time of sale to have been worth from $500 to $800. The purchase money was $500, reduced by costs and expenses of selling to $439 70; and the difference between $439 70 and the actual value of the property at the time of sale was the damage sustained. To this should be added interest on such difference, and any increase in the value between that time and the present from the improvement of the country, or other causes independent of the improvement of the farm, without interest on the latter item, and you have the actual injury sustained, which should be esteemed the true measure of damages.

You must treat the purchase money of $439 70 as paid. It was the duty of the administrators to bring it into their administration account as money collected on a judgment of the decedent, and the law presumes it was brought in and accounted for, although it is admitted in the case that it never was. The cost and expense of selling you will not allow. They would not be presumed to have been brought into the account, and were improperly incurred.

To this charge both parties except, and at request of plaintiff and defendant this bill of exceptions sealed.

Verdict for plaintiffs for $333 42.

Errors assigned on the part of Weiting and wife:

1. The court erred in charging the jury, that the measure of damages was the difference between $439 70, the proceeds of the sheriff's sale, after deducting costs and the value of the land at the time of the sheriff's sale.

2. In charging the jury, that they must treat the purchase money of $439 70, as paid. That for this the defendant was accountable in the Orphans' Court, and the law presumed it was accounted for there.

Errors were also assigned on the part of Nissley.

The case was argued by *M'Cormick* and *Penrose*, on the part of Weiting and wife; and by *Ulricks* and *Fisher* for Nissley.

[Weiting and wife *v.* Nissley.]

The opinion of the court was delivered by

GIBSON, C. J.—There is no substance in the defendants' assign-
ment of errors. The judge directed that if the administrators
acted in concert and with knowledge of the circumstances, the de-
fendant, as the survivor of them, is answerable in this action for
a tort; a position not to be disputed. Hershey, the plaintiff's
father, bought Jackson's land in consideration that he would pay
Jackson's debts, for which it had been conveyed to trustees; and
when that should be done, Hershey was to have a conveyance of
the title from them. Having got in the debts, he became, by the
terms of the articles, the equitable owner. If any remained out-
standing, of which there was no proof, it was the duty of the ad-
ministrators to pay them, and put the plaintiff in a position to
demand specific execution of the contract; instead of which they
sold the land to a purchaser without notice on a judgment of Her-
shey against Jackson, which was paramount to the legal title of
the trustees; and thus effectually rescinded it. In thus selling
her land for a debt due to herself, they not only made a monstrous
mistake, but acted with culpable precipitation in taking their own
advice; for though they employed counsel, it was not to consult
him, but to prescribe his path. For this, they became answerable,
not by citation, but by action; for we determined in Reed's Ap-
peal, not reported but accurately quoted by Justice HUSTON, in
his dissenting opinion in the case of Torr's Estate, 2 *Rawle* 256,
that the Orphans' Court has not jurisdiction of a devastavit in
the settlement of an administration account; much less has it ju-
risdiction of an injury to the real estate of the heir. No sentence
or decree of that court could impede the plaintiff in her pursuit
of the administrators by action on the case.

The record in this case, as in most others, has exceptions, like
the pockets of a billiard table, to catch lucky chances from ran-
dom strokes of the players; but as they have caught nothing, in
this instance, it is unnecessary to enter into a particular investiga-
tion of them. The debateable points are raised by the plaintiff's
assignment.

The measure of the damages is the value of the land when it
was sold, with interest from the sale; but what is the standard of
its value? A covenant of seizin is broken, if at all, at the de-
livery of the deed; and the value of the land fixed by the price
set upon it by the parties themselves, is the legal amount of the
compensation for the breach of it. The plaintiff is entitled to
nothing for the loss of the bargain or for improvements; and the
parties are consequently in *statu quo* when the purchase money is
returned. But here, the value has not been fixed by any agree-
ment between the plaintiff and the administrators who are not
parties to the agreement with Jackson, and who cannot say that
the value was not subsequently enhanced. The price bidden at

[Weiting and wife *v.* Nissley.]

the sheriff's sale is evidence of the worth of the property, but not conclusive: it is an approximation to it, and no more.   What did the plaintiff lose?   The market price of the land ascertained by the testimony of witnesses acquainted with the value of it at private sale; and so much, with interest, she is entitled to recover from the defendant as surviving administrator.

Had the purchase money or any part of it been paid over to her, the acceptance of it would have been an affirmance of the sale.   She had it in her power to go for it or for damages, not for both; for the rule that a party shall not proceed by inconsistent remedies or in inconsistent rights, is universal. The administrators were not charged with the proceeds in the settlement of their administration account; and the defendant insists that the confirmation of it is a final decree which concludes the right.   But the plaintiff could not have surcharged it without affirming the sale and waiving the tort.   Had she been bound to surcharge or loose the whole, she would have had no election; and a sacrifice of her property might have been legitimated by compelling her to take the price of it in satisfaction.   She was not bound to receive it. On the contrary, electing to pursue the administrators for the tort, it was her cue to resist every attempt to charge them: and whether successfully or not, the event could not deprive her of her election.   Nothing could do so but a voluntary acceptance of the purchase money with knowledge of the circumstances.   Had it been charged, she might perhaps have been required to show that she had not assented to it; but as it was not, there was no presumption of acquiescence.   She was therefore entitled to recover the actual value with interest from the time of the sale, notwithstanding any proceeding in the Orphans' Court.

Judgment reversed, and *venire de novo* awarded.